UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
LIJUN SUN,                             :
       Plaintiff,                 :
  -against-                           :   Case No. 19-cv-_____
BLUE OCEAN CAPITAL GROUP, INC.,        :   **JURY TRIAL DEMANDED**
ANTONY LIU, and MENGXIAN ZHANG,        :
       Defendants.                :
                                       :
------------------------------------- X

## COMPLAINT

Plaintiff Lijun Sun ("Plaintiff") makes this Complaint for violations of Sections 10 and 20 of the Securities and Exchange Act of 1934 (the "Exchange Act"), Securities and Exchange Commission ("SEC") Rule 10b-5, and Sections 12 and 15 of the Securities Act of 1933 (the "Securities Act"), and for common law fraud under New York law, and alleges as follows based upon personal knowledge with respect to his own acts, and upon information and belief as to all other allegations.

## NATURE OF THE ACTION

1.    This case arises from the unlawful sale of a new virtual currency token called MCash ("MCash Token") that was issued by Defendants Blue Ocean Capital Group, Inc. ("Blue Ocean Capital"), Antony Liu ("Liu"), and Mengxian Zhang ("Zhang") (collectively, "Defendants"). Not only was the MCash Token not properly registered with the U.S. Securities and Exchange Commission, but more importantly, in connection with selling the MCash Token, Defendants made numerous misrepresentations and omissions that induced Plaintiff to invest $2 million.

2. Defendants violated the federal securities laws by selling MCash Tokens from the United States, and accepting Plaintiff's money in a U.S. bank account without properly registering MCash Tokens with the SEC. As a result, Plaintiff is entitled to rescission of his $2 million investment and/or compensatory damages.

3. In addition to selling unregistered securities to Plaintiff, Defendant Zhang, on behalf of Blue Ocean Capital and at Defendant Liu's direction, committed federal securities law fraud and common law fraud under New York law by making numerous material misrepresentations and omissions about the MCash Token investment opportunity. Plaintiff relied on those material misrepresentations when he decided to invest in MCash Tokens. Only after Plaintiff wired Defendants the funds did Plaintiff learn that: (1) Plaintiff would have to enter into a Token Purchase Agreement not with Blue Ocean Capital—to which he had wired $2 million—but with another company, which the Defendants had failed to disclose; (2) MCash Tokens were unregistered securities; (3) there was no legal market for MCash Tokens in the United States; and (4) there was a one-year lockup period for the investment.

4. Plaintiff would not have invested in MCash Tokens had he known these facts. When Plaintiff demanded that Defendants return his $2 million, Defendants refused to return Plaintiff's money.

5. In fact, at an in-person meeting with Plaintiff's representatives in November 2018, Defendant Liu acknowledged that he was aware that the transaction in which he engaged with Plaintiff was not legal in the United States and that he could be exposed to charges of fraud. Defendant Liu then offered to invest Plaintiff's $2 million in some investment fund Defendants Liu and Blue Ocean Capital purportedly controlled—a fund Defendants had never discussed with

Plaintiff and in which Plaintiff had no interest in investing.  Plaintiff's representative, being polite, asked to see relevant fund documents, but none were able to be provided by Defendants.

6. Thus, by misappropriating and deceiving plaintiff into investing $2 million, Defendants also committed common law fraud under New York law.  Therefore, Plaintiff is entitled to compensatory damages in an amount of $2 million plus interest and punitive damages in an amount of $6 million.

**PARTIES**

7. Plaintiff Lijun Sun is a citizen of China and resident of California.  He transmitted a total of $2,000,020.93 to Blue Ocean Capital Group, Inc.'s New York bank account in reliance on Defendants' misrepresentations and the purported legality of MCash Tokens.

8. Defendant Blue Ocean Capital Group, Inc. is a Delaware corporation with its principal place of business in New York, New York.  Defendant Blue Ocean Capital is controlled by Defendant Antony Liu.  Defendant Blue Ocean Capital still holds Plaintiff's $2 million investment.

9. Defendant Antony Liu is a resident of New York and is the President and CEO of Defendant Blue Ocean Capital.  At all relevant times, Defendant Liu was aware of and directed the MCash Token investment scheme from New York.  He met with Plaintiff's assistant, Thomas Chang, in New York, New York, concerning Plaintiff's demand for the return of his investment, which Defendants rejected. Defendant Blue Ocean Capital's website[1] represents that Defendant Liu "is an experienced investment banker and philanthropist" with "over 20 years' experience managing global companies and conducting cross-border M&A deals."  The website also

---

[1] http://blue-ocean.capital/team/.

represents that he "manages a top-tier Blockchain development team and is an influencer in the industry."

10. Defendant Mengxian Zhang is a resident of New York and an agent of Defendant Blue Ocean Capital. She made numerous misrepresentations about the MCash Tokens, as detailed below. At all relevant times, Defendant Zhang was located in New York. Ms. Zhang also met with Plaintiff's assistant Mr. Chang in New York, New York. She was Plaintiff's principal contact concerning his investment in MCash Tokens.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Plaintiff alleges violations of Sections 10 and 20 of the Exchange Act, Rule 10-b5, and Sections 5, 12, and 15 of the Securities Act.

12. This Court has supplemental jurisdiction over Plaintiff's New York law fraud claim pursuant to 28 U.S.C. § 1367(a), because the fraud claim is so related to Plaintiff's claims under the Exchange Act and Securities Act that it forms part of the same case or controversy.

13. This Court also has subject matter jurisdiction over Plaintiff's New York law fraud claim pursuant to 28 U.S.C. §§ 1332(a)(1)-(2), because the parties are completely diverse and the amount in controversy exceeds $75,000.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 77v and 78aa, because Defendants are found, and/or reside, and/or are inhabitants of, or transact business within this District. Venue is also proper in this District because many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District.

**FACTUAL ALLEGATIONS**

A.      The MCash Investment Opportunity

15.     On May 29, 2018, Defendant Zhang first orally informed Plaintiff about an opportunity to invest in MCash Tokens at an in-person meeting in New York City.

16.     Defendant Zhang described the opportunity as an investment and represented that, in exchange for Plaintiff's investment, Plaintiff would receive MCash Tokens, and the MCash Tokens would increase in value over time.

17.     On May 30, 2018, Defendant Zhang sent Plaintiff the MCash White Paper via WeChat, a mobile messaging application. The White Paper, which was written in Chinese, purported to describe the MCash Token and its functionality.

18.     A website[2] affiliated with MCash describes MCash as the "Next Generation Digital Currency." It suggests that MCash will permit users to "TRANSACT Much Faster Than VISA, PayPal, Bitcoin, Ethereum, IOTA, etc."

19.     Defendant Zhang asked Plaintiff to download an application on his mobile phone and said that she would send 2 million MCash Tokens to Plaintiff's virtual currency wallet using the application. Plaintiff downloaded the application.

20.     On June 2, 2018, Defendant Zhang sent Plaintiff wiring instructions for him to transfer the investment funds to an entity called Blue Sky Capital Group LLC ("Blue Sky Capital") at a JPMorgan Chase Bank account in New York.

21.     On June 4, 2018, Plaintiff sent Defendant Zhang a message on WeChat stating that he wanted more time to consider the potential investment. Within minutes, Defendant Zhang requested to speak to Plaintiff by telephone.

---

[2]      http://www.m-cash.io/.

22.     At no time did Defendant Zhang advise Plaintiff that the MCash Token investment opportunity was not registered with the SEC and was therefore an unregistered securities offering, even though Defendant Zhang knew that Defendants had not taken steps to register the MCash Tokens with the SEC.

23.     On June 12, 2018, Defendant Zhang again sent Plaintiff wiring instructions to the same New York JPMorgan Chase account in the name of Blue Sky Capital.  Plaintiff stated via WeChat that he would promptly wire $1 million and that he would transmit the remaining funds later that week.

24.     Less than four hours later, Defendant Zhang sent a message stating that the funds had not yet been received.  She asked for the name of the company that was wiring the funds. Plaintiff responded with the company's name and account number.  Plaintiff informed her that the funds likely would arrive the next day.

25.     The next day, June 13, 2018, Plaintiff learned that his bank had blocked the wire transfer.  The bank informed Plaintiff that the Blue Sky Capital account was deemed high-risk because of potential connections to Iran.

26.     Plaintiff sent Defendant Zhang a WeChat message that same day informing her that the payment had been blocked due to potential connections to Iran and that the bank had requested more information about Blue Sky Capital.  Defendant Zhang responded that the account was a U.S. account, had nothing to do with Iran, and had never received any payments from Iran.

27.     Defendant Zhang also provided information regarding the transaction that she intended for Plaintiff to provide to his bank.  Defendant Zhang described the purpose of the payment as follows:  "This payment is from an investor to invest in our fund."

28. Defendant Zhang also provided a Delaware incorporation document for Blue Sky Capital, which showed that the company was registered on April 21, 2018, which was around the time Defendant Zhang first approached Plaintiff about investing in MCash Tokens.

29. There is not, however, an entity named "Blue Sky Capital Group LLC" listed on the Delaware Secretary of State's website.

30. On June 19, 2018, Plaintiff initiated another wire transfer of $246,000 to Blue Sky Capital's account in New York. Again, his bank blocked the wire as suspicious for potential connections to Iran.

31. Defendant Zhang then provided new wiring instructions and asked Plaintiff to wire the funds to a different U.S. bank account held by Defendant Blue Ocean Capital.

32. According to the Delaware Secretary of State's website, Defendant Blue Ocean Capital was incorporated only days earlier—on June 6, 2018.

33. On June 27, 2018, Plaintiff told Defendant Zhang on WeChat that he had completed multiple wire transfers to Blue Ocean Capital totaling $2 million. In response, Defendant Zhang told Plaintiff that she had just transferred $2 million worth of MCash Tokens to Plaintiff's virtual currency wallet via the mobile application she had asked him to download. Defendant Zhang then represented, "The value of the tokens will double very soon!" She further stated that she would "tell you when to cash out and when to unlock later," which was the first time she had mentioned anything suggesting that a lockup was associated with the investment.

34. Defendant Zhang knew that her promise that "[t]he value of the tokens will double very soon" was false, because she knew that MCash Tokens were not registered with the SEC and therefore there was no legal market for MCash Tokens in the United States, or

anywhere else.  In addition, Defendant Zhang had no basis to promise that the value of the tokens will double very soon.

35. Moreover, Defendant Zhang knew that the ability to resell MCash Tokens was material, and Plaintiff would not have invested in MCash Tokens if he knew they were unregistered securities that he could not resell.

36. Nevertheless, Defendant Zhang thereafter falsely represented to Plaintiff that the value of the MCash Tokens in fact had already doubled, and then further represented that their value would quadruple by October when an MCash mobile application was launched.

**B.    Plaintiff Receives a Draft Token Purchase Agreement with Materially Different Terms**

37. On September 10, 2018, Defendant Zhang sent a WeChat message to Plaintiff stating that a lawyer was preparing a written Token Purchase Agreement.

38. The next day, Defendant Zhang met in person in New York City with an agent sent by Plaintiff to obtain more details about the MCash Tokens.  At the meeting, Plaintiff's agent asked for documentation relating to the investment, and Defendant Zhang hand-wrote a receipt for Plaintiff's $2 million investment and gave it to Plaintiff's agent.  Defendant Zhang then took a picture of the handwritten receipt and sent it to Plaintiff along with an image purporting to be her driver's license.  Plaintiff retains the original handwritten receipt.

39. On September 29, 2018, Defendant Zhang e-mailed an unexecuted draft Token Purchase Agreement to Plaintiff and requested his signature.  To Plaintiff's surprise, the agreement purported to be between Plaintiff and a company called MicroChain Technology, LLC ("MicroChain Technology"), not Blue Ocean Capital.  Defendant Zhang had never mentioned MicroChain Technology or explained any connection it had to the MCash Tokens in her prior communications with Plaintiff.

40. Defendant Zhang knew that the identity of the entity selling MCash Tokens was material, and had Plaintiff known that Defendant Blue Ocean Capital was not the entity that was actually selling the MCash Tokens, he would not have wired $2 million to Defendant Blue Ocean Capital.

41. Under the terms of the draft Token Purchase Agreement, Plaintiff would purchase 2 million MCash Tokens for $1 per token. Although Plaintiff had already wired $2 million to Defendants by this point, the Token Purchase Agreement required payment within three business days of the Agreement.

42. The Agreement further provided a one-year lockup period. Yet before Plaintiff made his investment, Defendant Zhang never told him about a lockup. Defendant Zhang knew that such a lockup provision was material and should have been disclosed to Plaintiff in light of the circumstances and other representations but failed to do so before Plaintiff made his investment.

43. Further, the Token Purchase Agreement admitted that the MCash Tokens "have not been registered under any country's securities laws" while falsely claiming that the Tokens were not securities.

44. Defendant Zhang knew that the MCash Tokens' legal status was material, and had Plaintiff known that the MCash Tokens were unregistered securities, he would not have made the investment.

45. The Token Purchase Agreement also contained a clause stating, "This agreement is governed by the laws of Singapore," and included a clause providing that any dispute arising out of the Agreement would have to "be resolved by arbitration in Singapore." Defendant Zhang had not disclosed that any agreement with Plaintiff would be governed by Singapore law.

46. On October 26, 2018, Plaintiff's assistant, Thomas Chang, e-mailed Defendant Zhang seeking various information about the draft Token Purchase Agreement and the companies Blue Ocean Capital, Blue Sky Capital, and MicroChain Technology. Specifically, Mr. Chang requested information regarding:

    a. Who possessed the $2 million that Plaintiff had wired to Defendant Blue Ocean Capital;

    b. The relationship between Defendant Blue Ocean Capital, Blue Sky Capital, and MicroChain Technology;

    c. Further information about other individuals working with Defendant Zhang;

    d. The newly disclosed one-year lockup period; and

    e. Which company employed Defendant Zhang and whether she represented that company.

47. Defendant Zhang responded by e-mail that Defendant Blue Ocean Capital had the $2 million. She further stated that, contrary to her prior representations, Plaintiff's $2 million investment represented the "angel fund" for Defendant Blue Ocean Capital rather than a direct investment in MCash Tokens. She stated that technical problems had delayed launch of the MCash Tokens, but she promised that once the MCash Tokens were launched, Plaintiff could cash in 20% of his investment.

48. On October 31, 2018, Mr. Chang spoke to Defendant Zhang by telephone. During that conversation, Defendant Zhang asserted that MicroChain Technology is a subsidiary of Defendant Blue Ocean Capital that markets blockchain and virtual currency-related products. Defendant Zhang further stated that, while she was not an employee of Blue Ocean Capital, she

had "a very close relationship" with Defendant Blue Ocean Capital's owner and executives, including Defendant Liu, the company's President and CEO. She later sent biographies of individuals from the website http://blue-ocean.capital/team/.

49.     Plaintiff never executed the Token Purchase Agreement.

**C.     Defendants Refuse to Return Plaintiff's Investment**

50.     Plaintiff decided to demand his $2 million investment back because the terms of the Token Purchase Agreement were materially different from the terms that had been represented to him before he made his investment and because of other concerns he had regarding the legitimacy of the MCash Tokens.

51.     Besides the White Paper and the bare-bones MCash website, Defendants have not provided any documentation or explanation to describe the status of the MCash project or to demonstrate that MCash is legitimate and is developing "proprietary Gitium public chain . . . technology" that will allow users to "TRANSACT Much Faster Than VISA, PayPal, Bitcoin, Ethereum IOTA, etc.," as represented on MCash's website.[3]

52.     In November 2018, at Plaintiff's direction, Mr. Chang and Plaintiff's counsel attended a meeting at Defendant Blue Ocean Capital's New York City offices with Defendants Liu and Zhang.

53.     At the meeting, Mr. Chang requested additional information regarding the MCash Tokens. Defendant Liu acknowledged, speaking in Chinese directly to Mr. Chang, that he was aware that the transaction in which he engaged with Plaintiff was not legal in the United States and that he could be exposed to charges of fraud. Defendant Liu asked for Mr. Chang to work with him and then offered to put Plaintiff's $2 million investment into another fund that he

---

[3]     http://www.m-cash.io/.

purportedly runs.  According to Defendant Blue Ocean Capital's website, the company runs several private equity funds: (1) Blue Ocean Blockchain Fund, (2) Blue Ocean Health Care Fund, (3) Blue Ocean Franchise Industry Fund, and (4) Blue Ocean Real Estate Fund.[4]  Defendants did not, however, agree to return Plaintiff's money.

54.     Defendant Blue Ocean Capital's website claims that "Blue Ocean Blockchain is a private equity fund focusing on investment in Blockchain technology."  It further claims that "[t]he time and cost spent on fund management are greatly reduced" and promises a "more efficient" "compliance process."  Moreover, "Blue Ocean Blockchain Fund will focus on investing in Blockchain companies addressing real world problems.  Our mission is to drive the growth for Blockchain technology and to support entrepreneurs."

55.     Although Mr. Chang did ask for Defendants to send him documents relating to the Blockchain Fund, Defendants were unable to provide any fund documents, even after Mr. Chang sent Defendant Liu WeChat messages inquiring about the documents on November 29 and 30, 2018.

56.     On December 4, 2018, Mr. Chang made the following demand in a WeChat message:

> We still have received no documentation relating to your fund, and at this point Mr. Sun does not have interest in investing in a fund about which he has no information. With respect to the $2 million of Mr. Sun's which you hold on account of the MCash tokens, as we discussed in New York that transaction has many legal problems in the United States.  It would be best for both parties if you were to return Mr. Sun's money to him, and then reach back out when you have taken all of the legal steps necessary to sell tokens in the US.  Please confirm that you are prepared to return Mr. Sun's $2 million, and I will provide you with wiring instructions.

---

[4]     http://blue-ocean.capital/private-equity/.

57. After Defendant Liu requested an in-person meeting with Plaintiff, Mr. Chang responded by e-mail on December 5, 2018 that Plaintiff could not meet Defendant Liu in person, and Mr. Chang again requested the return of Plaintiff's money.

58. Defendants did not respond to Mr. Chang's email, and since December 2018 have failed to return Plaintiff's money or provide adequate assurances that they would do so.

## CAUSES OF ACTION

## COUNT I

**VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5**
**(Against All Defendants)**

59. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

60. This Count is brought pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, against Defendants Blue Ocean Capital, Liu, and Zhang.

61. Defendants, directly or indirectly, by use of the means and instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly, employed devices, schemes, or artifices to defraud, and engaged in acts, practices, and courses of business which operate or would operate as a fraud or deceit.

62. Defendants made untrue statements of material fact and omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63. Had Plaintiff known the truth about the MCash investment, he would not have wired $2 million to the Blue Ocean Capital bank account.

64. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff suffered damages in connection with his investment in MCash Tokens.

## COUNT II

### VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT
(Against Antony Liu and Mengxian Zhang)

65. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

66. This Count is asserted against Defendants Liu and Zhang (the "Control Person Defendants") under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

67. The Control Person Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act. The Control Person Defendants had the power and influence and exercised the same to cause the material misrepresentations and omissions in connection with the offer and sale of MCash Tokens as described herein.

68. The Control Person Defendants, separately or together, possess, directly or indirectly, the power to direct or cause the direction of the management and policies of Blue Ocean Capital, through the ownership of voting securities, by contract, subscription agreement, or otherwise.

69. The Control Person Defendants, separately or together, were direct participants in making, and/or were made aware of the circumstances surrounding, the materially false and/or misleading representations and omissions regarding the offer and sale of MCash Tokens to Plaintiff.

70. As a direct and proximate result of the Control Person Defendants' wrongful conduct, Plaintiff suffered damages in connection with his investment in MCash Tokens.

### COUNT III

### VIOLATIONS OF SECTIONS 5 AND 12(a)(1) OF THE SECURITIES ACT
(Against All Defendants)

71. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

72. This Count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e and 77*l*(a)(1), against Defendants Blue Ocean Capital, Liu, and Zhang.

73. MCash Tokens are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

74. Defendants promoted, offered, and/or sold securities by selling MCash Tokens.

75. Defendants are issuers, underwriters, and/or necessary participants of/in the sales of MCash Tokens.

76. No Defendant or other person filed with the SEC a registration statement for the offer and sale of MCash Tokens, no registration was in effect at the time Plaintiff made his investment in MCash Tokens, and no exemption to the registration requirement was available.

77. Defendants used the instrumentalities of interstate commerce in connection with the offer and sale of MCash Tokens.

### COUNT IV

### VIOLATION OF SECTION 15 OF THE SECURITIES ACT
(Against Antony Liu and Mengxian Zhang)

78. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

79. This Count is asserted against the Control Person Defendants under Section 15 of the Securities Act, 15 U.S.C. § 77o.

80. The Control Person Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 15 of the Securities Act. The Control Person Defendants had the power and influence and exercised the same to cause the unlawful offer and sale of MCash Tokens as described herein.

81. The Control Person Defendants, separately or together, possess, directly or indirectly, the power to direct or cause the direction of the management and policies of Blue Ocean Capital, through the ownership of voting securities, by contract, subscription agreement, or otherwise.

82. The Control Person Defendants, separately or together, have sufficient influence to have caused Blue Ocean Capital to submit a registration statement.

83. The Control Person Defendants, separately or together, jointly participated in, and/or aided and abetted, Blue Ocean Capital's failure to register the MCash Tokens.

84. By virtue of the conduct alleged herein, the Control Person Defendants are liable for the wrongful conduct complained of herein and are liable to Plaintiff for rescission and/or damages suffered.

## COUNT V

**COMMON LAW FRAUD**
**(Against All Defendants)**

85. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

86. This Count is asserted against Defendants Blue Ocean Capital, Liu, and Zhang.

87. Defendants authorized and/or made representations concerning the investment opportunity into MCash Tokens.

88. The misrepresentations and omissions alleged herein include representations relating to (1) the entity with which Plaintiff was entering into an investment contract versus the entity to which he was wiring his investment funds; (2) the legality of the sale of MCash Tokens in the United States without being registered with the SEC; (3) the availability of a legal market for MCash Tokens in the United States; and (4) the investment's one-year lockup period.

89. Defendants' representations and omissions were materially false and misleading when made. These representations and omission were made intentionally or with reckless disregard for the truth.

90. Defendants made these misrepresentations and omissions to Plaintiff directly with knowledge that Plaintiff would rely on them.

91. Based up on their superior knowledge and expertise, their incomplete and misleading disclosures, and in light of the fact that Plaintiff did not have access to material facts that were uniquely within Defendants' knowledge, Defendants had an affirmative duty to provide full, complete, and accurate disclosure of these material facts.

92. Plaintiff reasonably and justifiably relied to his detriment on Defendants' misrepresentations and omissions and on Defendants' affirmative duty to provide full, complete, and accurate disclosures to him.

93. Defendants' misrepresentations and omissions induced Plaintiff to purchase MCash Tokens, which he would not have done had he known the truth.

94.     As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff has suffered damages, and Defendants are liable to Plaintiff in an amount in excess of $2 million plus interest.

95.     Because Defendants' conduct affected the public generally, and was gross and highly morally culpable, Plaintiff also is entitled to punitive damages in the amount of $6 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.      Declaring that Defendants offered and sold unregistered securities in violation of the federal securities laws;

B.      Declaring that Defendants are liable to Plaintiff under Sections 10(b) and/or 20(a) of the Exchange Act and/or Sections 5, 12(a)(1), and/or 15(a) of the Securities Act;

C.      Preliminarily enjoining Defendants from making further transfers or dissipations of the investments raised from Plaintiff, or using such funds in any further purchases or transactions;

D.      Requiring an accounting of the funds and assets raised from Plaintiff in connection with the sale of MCash Tokens;

E.      Imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff;

F.      Ordering rescission of the investments made by Plaintiff in the unregistered securities, and/or compensatory damages in an amount in excess of $2 million;

G.      Awarding Plaintiff pre-judgment interest at the statutory rate of 9% pursuant to CPLR §§ 5001 & 5004, which as of January 31, 2019 amounts to $111,452.05;

      H.      Awarding Plaintiff $6 million in punitive damages on account of Defendants' intentional, deliberate, malicious, willful, and wanton conduct as alleged above;

      I.      Awarding Plaintiff, the cost of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      J.      Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: New York, New York.
      February 1, 2019

Respectfully submitted,

By: */s/ Alan B. Howard*

Alan B. Howard
John T. Dixon
Perkins Coie LLP
30 Rockefeller Plaza, 22nd Floor
New York, NY  10112-0085
212.262.6900
AHoward@perkinscoie.com
JohnDixon@perkinscoie.com

*Attorneys for Plaintiff Lijun Sun*